UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREAT MEADOW CAFE                )<br>*Plaintiff*,                                        )<br>                                                      )<br>v.                                                   )<br>                                                      )<br>CINCINNATI INSURANCE COMPANY  )<br>*Defendant*.                                  ) | 3:21-CV-00661 (KAD)<br><br><br><br><br><br>MARCH 17, 2022 |

**MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS**
**(ECF No. 23)**

Kari A. Dooley, United States District Judge:

Plaintiff Great Meadow Café, LLC d/b/a River, A Waterfront Restaurant and Bar, brought this diversity action against Defendant Cincinnati Insurance Company, seeking insurance coverage for losses it sustained as a result of the COVID-19 pandemic and the government shutdown of its business occasioned thereby, pursuant to the terms of a commercial property and casualty insurance policy issued to it by Defendant ("Policy"). In a six count Amended Complaint, Plaintiff asserts claims for declaratory judgment as to the parties' respective rights and obligations under the Policy, breach of contract, breach of duty of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq* ("CUTPA"). Pending before the Court is Defendant's motion to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant seeks dismissal on the ground that the losses Plaintiff sustained as a result of the COVID-19 pandemic and the related government orders do not constitute direct "accidental physical loss or accidental physical damage" to its property, as required for coverage under the Policy. In response, Plaintiff argues that the plain language of the Policy provides coverage for its losses. For the reasons that follow, Defendants' motion to dismiss is GRANTED.

**Standard of review**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*. "When deciding a motion to dismiss, a district court may consider documents attached to the complaint or incorporated by reference into the complaint[,] including an insurance policy referenced in the complaint." *ENT and Allergy Associates, LLC v. Continental Casualty Co. and CAN Financial Corp.*, No. 3:21CV00289(SALM), 2022 WL 624628, at *3 (D. Conn. Mar. 3, 2022) (citing *New Image Roller Dome, Inc. v. Travelers Indem. Co. of Ill.*, 310 F. App'x 431, 432 (2d Cir. 2009)) (internal quotation mark omitted, alternation in original).

**Allegations**

2

The Court accepts as true the following facts drawn from the Amended Complaint and the Policy.[1]

Plaintiff is a Connecticut Limited Liability Company that owns and operates River, A Waterfront Restaurant and Bar, located at 100 Great Meadow Road, Wethersfield, Connecticut ("premises"). (ECF No. 19, ¶ 8). Defendant is an Ohio property and casualty insurance company licensed by the Connecticut Insurance Department to write certain insurance policies. (*Id.*, at ¶ 9). To protect against losses due to interruptions in its business, Plaintiff purchased the Policy from Defendant with effective dates of April 11, 2019 to April 11, 2022. (*Id.*, at ¶¶ 6, 10). The Policy included, in pertinent part, a Building and Personal Property Coverage Form, (*see* form FM 101 05 16, ECF No. 23-2, at 22–61), and a Business Income (and Extra Expense) Coverage Form. (*See* form FA 213 05 16, *id.*, at 98–106).

The Building and Personal Property Coverage Form is the main coverage form. The Building and Personal Property Coverage Form provides coverage "for direct 'loss' to Covered Property[2] at the 'premises' caused by or resulting from any Covered Cause of Loss." (ECF No. 23-2, at 24). The Policy defines "Covered Cause of Loss" as "direct 'loss' unless the 'loss' is excluded or limited."[3] (*Id.*, at 26). The Policy further defines "loss" as "accidental physical loss or accidental physical damage." (*Id.*, at 59).

---

[1] Plaintiff attached a copy of the Policy in its entirety to the Complaint, (*see* ECF No. 1, at 34–328), but did not attach a copy to the Amended Complaint, the operative pleading. (*See* ECF No. 19). Nonetheless, the Court may consider this document in its ruling on Defendant's motion to dismiss because it is referred to in Plaintiff's Amended Complaint and is central to Plaintiff's claims. *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, No. 3:20CV00640(SALM), 2022 WL 603028, at *2 n.2 (D. Conn. Mar. 1, 2022).
[2] The Policy defines "Covered Property" to include, *inter alia*, the building, fixtures, machinery and equipment, furniture, and stock. (ECF No. 23-2, at 24).
[3] The Policy contains no virus exclusion and no pandemic exclusion. (ECF No. 19, ¶ 20). While the definition of Covered Cause of Loss refers to exclusions, the Court need not consider exclusions unless there is first direct physical loss or damage sufficient for coverage under the policy. *See Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, No. 21-1082-cv, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022) ("[T]he absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage."); *see also City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 43–44 (2d Cir. 2003) (reasoning that if there was no coverage under the policy, then court need not consider whether claimed losses were subject to exclusion). Because the Court finds that there is

The Business Income (and Extra Expense) Coverage Form provides coverage for the interruption of the Plaintiff's business at the premises and any resulting extra expenses, but only if the necessary elements for Building and Personal Property Coverage are satisfied. Specifically, it provides coverage for (1) "the actual loss of 'Business Income' . . . due to the necessary 'suspension'[4] of your 'operations'[5] during the 'period of restoration'[6] . . . . [where] [t]he 'suspension' . . . [is] caused by direct 'loss' to property at 'premises' . . . caused by or result[ing] from a Covered Cause of Loss;" and (2) "Extra Expense . . . during the 'period of restoration' that . . . would not have [been] sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss." (*Id*., at 98). A "Covered Cause of Loss," and thus, direct accidental physical loss or accidental physical damage to Covered Property, is an express requirement for any coverage under the Policy.

As of March of 2020, Plaintiff operated a functioning full-service restaurant and bar, with many patrons and approximately seventy employees. (ECF No. 19, ¶ 44). In March of 2020, the World Health Organization and the Governor of Connecticut, Ned Lamont, identified the coronavirus disease ("COVID-19") as a "pandemic." (*Id*., at ¶ 37; ECF No. 26-1, at 4). The Centers for Disease Control and Prevention reported that COVID-19 remains transmissible and active on inert physical surfaces. (ECF No. 19, ¶ 25). COVID-19 infections were reported to spread through airborne transmission of respiratory droplets and particles, which can linger in the air for hours and be deposited on physical surfaces. (*Id*., at ¶ 26–27).

---

no coverage for Plaintiff's claimed losses under the Policy, it need not address the exclusions (or lack of exclusions) therein.
[4] The Policy defines "suspension" as "[t]he slowdown or cessation of . . . business activities . . . [where] a part or all of the 'premises' is rendered untenable." (*Id*., at 106).
[5] The Policy defines "operations" as "business activities occurring at the 'premises.'" (*Id*., at 106).
[6] The Policy defines "period of restoration' as "the period of time that . . . [b]egins at the time of direct 'loss' . . . and [e]nds on the earlier of: (1) The date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (*Id*., at 106).

As a result of the COVID-19 pandemic, Governor Lamont declared a public health and civil preparedness emergency throughout Connecticut. (*Id.*, at ¶ 1). The declaration was to remain in effect until April 20, 2021, unless terminated earlier. (*Id.*). To combat the spread of COVID-19, on March 16, 2020 Governor Lamont ordered all restaurants and bars in Connecticut to close, including the Plaintiff's premises, and prohibited service other than food and non-alcoholic beverage take-out and delivery service ("government orders"). (*Id.*, at ¶ 43). The government orders continued in varying degrees for more than one year as the COVID-19 pandemic persisted, limiting Plaintiff's operation of the premises to partial capacity throughout that time. (*Id.*, at ¶¶ 42–54). As a result of COVID-19 and the government-ordered closure of the premises, Plaintiff's ability to service customers in its restaurant and bar was restricted. (*Id.*, at ¶¶ 46–47, 53–54).[7]

In March of 2020, Plaintiff submitted a claim to Defendant under the Policy for losses it sustained due to COVID-19 and the government orders. (*Id.*, at ¶ 55). Thereafter, Defendant denied coverage. (*Id.*, at ¶¶ 56–57). Plaintiff avers that Defendant uniformly denies coverage to all its insureds with similar policies for losses related to COVID-19. (*Id.*, at ¶ 58).

On May 13, 2021, this matter was removed from the Superior Court of Connecticut, Hartford judicial district, by Defendant pursuant to 28 U.S.C. § 1441 and this Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1, at 1, 18–21). On July 2, 2021, Plaintiff filed a six count Amended Complaint. (ECF No. 19). On July 30, 2021, Defendant filed the instant motion to dismiss. (ECF No. 23).[8] Therein, Defendant contends that the losses Plaintiff sustained as a result of the COVID-19 pandemic and the government orders do not constitute "direct physical

---

[7] At times, certain individuals employed at Plaintiff's premises were absent from work and reported that they had contracted COVID-19. (*Id.*, at ¶ 40). Upon notification that an employee had contracted COVID-19, Plaintiff took precautions to reduce the risk of transmission, including attempts to sanitize the Covered Property. (*Id.*, at ¶ 41).
[8] Thereafter and as of the time of this writing, Defendant filed fifteen notices of supplemental authority in support of its motion to dismiss. (ECF Nos. 25, 30, 31, 34–45).

loss or physical damage" to its Covered Property under the Policy. (ECF No. 23-1). Specifically, Defendant argues that Connecticut courts construe nearly identical language—"direct physical loss or damage"—to require an "actual alteration or change in property," and that the presence of COVID-19 at Plaintiff's premises or the resulting government orders did not cause any physical alteration to the Covered Property. (*Id.*, at 8, 12). In opposition, Plaintiff argues that a policyholder could reasonably construe "direct physical loss *or* physical damage" as including losses occasioned by the COVID-19 pandemic under the plain reading of the Policy and common dictionary definitions of its terms. (*Id.*, at 1, 10). Specifically, with emphasis on the disjunctive language in the Policy, Plaintiff argues that it suffered direct "physical loss" when the likely presence of COVID-19 particles in its premises rendered the Covered Property dangerous to use for its full intended purpose or when the government orders restricted access to the premises, rendering portions of the Covered Property unusable for their intended purpose. (*Id.*, at 1–2, 10). Plaintiff further rejects Defendant's contention that Connecticut courts construe similar policy language to require an "actual alternation or change in property." (*Id.*, at 19). The matter was fully briefed as of September 13, 2021.

**Discussion**

Plaintiff claims that it is entitled to coverage under the Business Income and Extra Expense provisions of the Policy for its COVID-19 related losses. The primary issue before the Court with respect to each of Plaintiff's claims is therefore whether the losses Plaintiff sustained as a result of the COVID-19 pandemic and government orders constitute direct "accidental physical loss or accidental physical damage" to its Covered Property, as required for coverage under the Policy.

The parties agree that Connecticut law applies in this case. (*See* ECF No. 23-1, at 6; ECF No. 26, at 1). Under Connecticut law, it is well-settled that an insurance policy is construed in

accordance with general contract interpretation principles. *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37, 84 A.3d 1167, 1173 (2014). "In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Lexington Ins. Co*., 311 Conn. at 37–38.

As indicated above, the Court must ascertain the meaning of the phrase, "direct accidental physical loss or accidental physical damage." "Where, as here, a term is undefined in an insurance policy, it must be given its plain, ordinary meaning." *ENT & Allergy Assocs*., 2022 WL 624628, at *5 (internal quotation mark omitted). The United States Court of Appeals for the Second Circuit and courts in the District of Connecticut have uniformly found that the plain, ordinary meaning of

nearly identical language, "direct physical loss or damage," is "reasonably susceptible to only one interpretation, and unambiguously requires a physical alteration to property." *See id.*, at *8 (citing Second Circuit and District Court cases). The Court finds this interpretation persuasive, even if not bound by Second Circuit precedent on this issue.

In *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, the Second Circuit considered an insurance claim by an art gallery for losses relating to the gallery's closure due to the COVID-19 pandemic and resulting government orders. 21 F.4th 216, 218 (2d Cir. 2021). The policy at issue was limited to "direct physical loss of or damage to" plaintiff's property. *Id*. The central issue before the Second Circuit was "whether the [p]olicy provides coverage for [plaintiff's] financial losses even though [plaintiff] does not allege that its closure resulted from physical damage" to the insured property. *Id.*, at 220. The Second Circuit held that, under New York law, "the terms 'direct physical loss' and 'physical damage' . . . do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property." *Id.*, at 222. The Second Circuit therefore concluded that the plaintiff could not recover its losses under the policy "[b]ecause [plaintiff] allege[d] only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property." *Id*. at 223.

In *Kim-Chee LLC v. Philadelphia Indem. Ins. Co*., the Second Circuit dismissed a similar claim pursuant to an insurance policy "materially identical" to the policy in *10012 Holdings* and governed by New York law. No. 21-1082-cv, 2022 WL 258569, at *1 (2d Cir. Jan. 28, 2022). The issue before the Second Circuit was "whether the coronavirus and the government restrictions responding to it caused 'direct physical loss of or damage to' property." *Id*. Relying on *10012*

*Holdings*, the Second Circuit stated that plaintiff "cannot base its business interruption claim on loss of possession or access . . . [or] argue that closure due to the risk of possible human infection [can] qualify as a risk of direct physical loss." The Second Circuit explained that, "to survive dismissal, [plaintiff's] complaint must plausibly allege that the virus itself inflicted 'actual physical loss of or damage to' property." *Id*., at *1 (citation omitted; internal quotation marks omitted). *See also Rye Ridge Corp. v. Cincinnati Ins. Co*., No. 21-1323-cv, 2022 WL 120782, at *1–2 (2d Cir. Jan. 13, 2022) (dismissing claim for COVID-19 related coverage under policy requiring "direct physical loss" where plaintiffs did "not allege any physical damage to their insured premises").

"[B]oth Connecticut and New York law share the same principles for interpreting insurance policies." *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co*., No. 3:20CV00640(SALM), 2022 WL 603028, at *9 n.4 (D. Conn. Mar. 1, 2022); *see also Wiener v. AXA Equitable Life Ins. Co*., No. 16CV04019(ER), 2021 WL 1226925, at *7 (S.D.N.Y. Mar. 31, 2021) (conducting comprehensive comparison of New York and Connecticut law regarding interpretation of insurance contracts). To date, three courts in the District of Connecticut have analyzed the applicability of *10012 Holdings* to similar policy language under Connecticut law. *Dr. Jeffrey Milton, DDS*, 2022 WL 603028; *Conn. Children's Med. Ctr. v. Cont'l Cas. Co*., No. 3:21CV00291(JAM), 2022 WL 168786 (D. Conn. Jan. 19, 2022); *ENT & Allergy Assocs*., 2022 WL 624628.[9]

---

[9] Prior to *10012 Holdings*, several courts in the District of Connecticut have analyzed under Connecticut law policy language not materially different to the Policy here. Consistent with the Second Circuit's interpretation of the relevant policy language, these courts have similarly dismissed claims for COVID-19 related coverage, reasoning that "[u]nder . . . Connecticut law, 'direct physical loss' requires physical alteration of property." *Cosm. Laser, Inc. v. Twin City Fire Ins. Co*., No. 3:20CV00638(SRU), 2021 WL 3569110, at *13 (D. Conn. Aug. 11, 2021). *See also Farmington Vill. Dental Assocs., LLC v. Cincinnati Ins. Co*., 549 F.Supp.3d 249, 261, No. 3:20CV01647(VAB), 2021 WL 3036902, at *10 (D. Conn. July 19, 2021) ("Under Connecticut law . . . losses due to a property's inoperability without any physical loss or damage to the property itself are not recoverable with this type of property insurance coverage.").

In *Conn. Children's Med. Ctr. v. Cont'l Cas. Co.*, the court dismissed plaintiffs' claims for COVID-19 related losses pursuant to a policy that required "direct physical loss or damage" to their property. 2022 WL 168786, at *1. Plaintiffs posited two theories for coverage. First, plaintiffs argued that "their loss of use of their property (whether by reason of the COVID-19 pandemic or resulting governmental orders) constitutes a 'direct physical loss or damage' to their property." *Id.*, at *3. Second, Plaintiffs argued that "the COVID-19 virus itself has a physical manifestation that causes a 'direct physical loss or damage' to their property." *Id.*, at *4. The court rejected both arguments, finding that, under Connecticut law, "whether the theory [for coverage] is based on 'loss of use' of property or based on 'physical damage' from the COVID-19 virus itself, the result is the same: there is no 'direct physical loss or damage' to property." *Id.*, at *6.

In *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, plaintiff asserted claims for COVID-19 related losses pursuant to a policy that "requires that the loss be a result of 'direct physical loss or damage to' plaintiff's property." 2022 WL 603028, at *8. Plaintiff asserted that the presence of COVID-19 at its property rendered it unduly dangerous and unusable for its intended use. *Id*. Plaintiff further asserted that COVID-19 structurally altered the surfaces of the property and ambient air within the property and resulted in a loss of functionality of the space for business purposes. *Id.*, at *10. The court rejected all of plaintiff's theories of coverage and dismissed plaintiff's claims under the policy. *Id*. The court reasoned that "[u]nder . . . Connecticut law, 'direct physical loss' requires physical alteration of property." *Id.*

Most recently, in *ENT & Allergy Assocs., LLC v. Cont'l Cas. Co.*, the court considered plaintiffs' claims for coverage for COVID-19 related losses. 2022 WL 624628, at *3. The policies at issues provided coverage for "direct physical loss of or damage to Covered Property." *Id.*, at *5. Interpreting the policies under Connecticut law, the court "join[ed] the other courts in the District

of Connecticut and throughout the Second Circuit," and held that "the terms 'direct physical loss' and 'physical damage' . . . do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property." *Id*., at *8. Based on this unwavering interpretation, the court further found that none of plaintiffs' claimed COVID-19 related losses were covered under the policies. *Id*.

Here, the Policy is not materially different than those interpreted by the Second Circuit and courts in the District of Connecticut—it requires direct "physical loss" or "physical damage" to trigger coverage. The Court sees no meaningful basis upon which to distinguish this case from the cases cited above that have interpreted those terms. Accordingly, this Court also concludes that the plain, ordinary meaning of "physical loss" or "physical damage" unambiguously requires physical damage or physical alteration to the Covered Property.[10] Because Plaintiff has not alleged any facts supporting its claim that the Covered Property suffered direct "accidental physical loss or accidental physical damage," Plaintiff is not entitled to coverage under the Policy.

Insofar as all of Plaintiff's claims are premised on the Defendant's failure to provide coverage, and insofar as the Court has determined that the Plaintiff is not entitled to coverage under the Policy, the motion to dismiss is granted in its entirety. *See, e.g., Conn. Children's Med. Ctr*., 2022 WL 168786, at *6 ("[I]n the absence of any underlying breach of contract claim, the plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing."); *see, e.g.,*

---

[10] Plaintiff contends that the use of the disjunctive "or" in the Policy necessarily signifies that "physical loss" means something distinct from "physical damage." Specifically, Plaintiff argues that interpreting "physical loss" to mean "physical damage" would render either term superfluous, contrary to Connecticut's rules of construction, and relies on common dictionary definitions of "loss" in support of its claim that physical alteration or change to property is not required for coverage. "Multiple courts have convincingly rejected this theory because the terms 'loss' and 'damage' are *not* redundant and have readily different meanings." *Conn. Children's Med. Ctr*., 2022 WL 168786, at *4 (emphasis in original). "The fact that 'direct physical loss' and 'direct physical damage' both require tangible alteration to property does not render either term superfluous." *ENT & Allergy Assocs*., 2022 WL 624628, at *7 (citing *Cosm. Laser*, 2021 WL 3569110, at *14; *Conn. Children's Med. Ctr*., 2022 WL 168786, at *4).

*Farmington Vill. Dental Assocs., LLC v. Cincinnati Ins. Co.*, 549 F. Supp. 3d 249, 265 (D. Conn. 2021) ("[B]ecause [Plaintiff's] breach of contract claim fails, its CUTPA and CUIPA claims fail as well."); *see also ENT & Allergy Assocs.*, WL 624628, at *12, *14 ("Because plaintiff['s] breach of contract claim fails, so too does [its] claim for bad faith denial of coverage. . . . [And] because the Court concludes that defendants' denial of coverage was justified, plaintiffs fail to state a claim for violation of CUTPA/CUIPA on this basis.").

**Conclusion**

For all of the foregoing reasons, the Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of March 2022.

      /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE